The Honorable Thomas D. Dean Prosecuting Attorney Tenth Judicial District 506 South Main Street Monticello, AR 71655
Dear Mr. Dean:
I am writing in response to your request for my opinion concerning the Municipal Ambulance Licensing Act (the "Act"), A.C.A. § 14-266-101—110 (Repl. 1999). As background for your questions, you note that the municipalities in which two county hospitals are located have each adopted exclusive franchise agreements with emergency medical services providers pursuant to the Act. You further note that the powers granted to municipalities under the Act include the following:
 To regulate all intracity patient transports and intercity and intracounty patient transports originating from within the regulating city. However, this chapter shall not restrict or allow local regulation of not-for-hire on a fee-for-service basis transportation, any intercounty patient transports, or intercity patient transports to or from medical facilities within the regulating city originating from anywhere outside the regulating city.
A.C.A. § 14-266-105(a)(5).
Your specific questions in this regard are as follows:
 1. Do municipalities have the authority generally under the Municipal Ambulance Licensing Act to regulate emergency medical services providers for county hospitals located within the municipality?
 2. The statute cited above authorizes municipal regulation of `intercity . . . patient transports originating from within the regulating city,' but the same does not provide for local regulation of `intercounty patient transports.' Are patient transports between cities that are located in different counties authorized for local regulation by the `intercity' provision, or is local regulation prohibited by the `intercounty' exception regardless of where the transport originates? Does the requirement in the statute's exception that the transport originate `outside the regulating city' apply only to intercity transports, or to both intercity and intercounty transports?
RESPONSE
It is my opinion that the answer to your first question is "yes." Subsection 14-266-102(a)(2) of the Code expressly authorizes cities to regulate "any and all aspects attendant to providing emergency medical services and ambulance operations within the boundaries of their respective cities. . . ." With respect to the first part of your second question, although the statute is somewhat confusing, I believe the "intercounty" exception set forth at A.C.A. § 14-266-105(a)(5) bars local regulation of transports between cities lying in different counties regardless of where the transport originates. The statute authorizes a city to regulate (1) intracity ambulance transports originating within the city; (2) intercity transports originating within the city that do not leave the county; and, in all likelihood, (3) any intracounty transport originating in the city but not culminating in another city. However, the statute expressly bars local regulation of any intercounty transport, regardless of where it originates. With respect to the second part of this question, if an intercity transport originates outside a city and occurs to or from a medical facility within the city, the punctuation of the statute suggests that the transport cannot be subject to regulation by the city. Again, as noted above, the statute appears to proscribe any local regulation of intercounty patient transports, regardless of where the transport originates.
Question 1 — Do municipalities have the authority generally under theMunicipal Ambulance Licensing Act to regulate emergency medical servicesproviders for county hospitals located within the municipality?
Yes, based on the following provisions. But see response to Question 2, below, concerning regulatory authority for intracounty and intercounty transports.
Arkansas Code Annotated § 14-266-102 states in relevant part:
 (a)(1) It is legislatively determined that it may be desirable for cities of the first class and second class within this state to be authorized and empowered to own, operate, permit, control, manage, franchise, license, and regulate emergency medical services, emergency medical technicians, emergency and nonemergency ambulances, ambulance companies, their relative properties, facilities, equipment, personnel, and any and all aspects attendant to providing emergency medical services and ambulance operations as the cities may deem proper to provide for the health, safety, and welfare of their citizens.
 (2) In addition, it is legislatively determined that, in order to accomplish the purposes enumerated in this chapter, it may also be necessary for the cities, in addition to all other powers granted in this chapter, to enact and establish standards, rules, and regulations that are equal to, or greater than, the minimum standards, rules, and regulations established by the state . . . concerning emergency medical services, emergency medical technicians, ambulances, ambulance companies, their relative properties, facilities, equipment, personnel, and any and all aspects attendant to providing emergency medical services and ambulance operations within the boundaries of their respective cities. . . .
 (b)(1) It is further legislatively determined that emergency medical services and ambulance operations, when subjected to competitive practices of multiple companies simultaneously serving the same city, operate under precarious financial conditions and that this type of competition is harmful to the health, safety, and welfare of residents of the state.
 (2) However, it is also legislatively determined that periodic competition among companies for the right to provide ambulance services offers a safe and effective means of encouraging fair and equitable private-sector participation.
 (3) Therefore, in order to ensure the availability of state-of-the-art advanced life-support systems and ambulance systems, the General Assembly specifically delegates and grants to cities of the first class and second class the right and power to contract exclusively or otherwise, using competitive procurement methods, for the provision of emergency medical services and ambulance services for the city and to provide continuing supervision of those services.
 (c) The General Assembly has determined that this chapter grants cities of the first class and second class broad authority regarding emergency and nonemergency medical services. . . .
Section 14-43-601(b) of the Code (Repl. 1998) further provides:
 (1) Matters of public health, which concern emergency medical services, emergency medical technicians, and ambulances, as defined in §§ 20-13-201—20-13-209 and 20-13-211, and ambulance companies, shall be included in the term" municipal affairs" of cities of the first class.
 (2)(A) These cities shall have the authority to enact and establish standards, rules, or regulations which are equal to, or greater than, those established by the state concerning emergency medical services, emergency medical technicians, ambulances, and ambulance companies.
 (B) The standards, rules, or regulations shall not be less than those established by the state for the rating of the service offered.
Further, A.C.A. § 14-266-105(a) provides in part that cities of the first and second class are authorized:
 (1) To enact and establish standards, rules, and regulations which are equal to or greater than those established by the state concerning emergency medical services, as defined in this chapter, and emergency medical technicians, emergency and nonemergency ambulances, and ambulance companies . . .;
 (2) To establish, own, operate, regulate, control, manage, permit, franchise, license, and contract with, exclusively or otherwise, emergency medical services, ambulances, ambulance companies, and their relative properties, facilities, equipment, personnel, and any and all aspects attendant to emergency medical services and ambulance operations, whether municipally owned or otherwise, including, but not limited to, rates, fees, charges, or other assessments as the cities consider proper to provide for the health, safety, and welfare of their citizens;
* * *
 (5) To regulate all intracity patient transports and intercity and intracounty patient transports originating from within the regulating city. However, this chapter shall not restrict or allow local regulation of not-for-hire on a fee-for-service basis transportation, any intercounty patient transports, or intercity patient transports to or from medical facilities within the regulating city originating from anywhere outside the regulating city. . . .
As you can see, these provisions vest cities of the first and second class with broad authority to regulate the emergency medical services providers that serve their cities. Accord Op. Att'y Gen. 97-208 (regarding ambulance services).[1] It is my opinion, in response to your particular question, that this generally includes emergency medical services providers for county hospitals located within the city.[2]
Question 2 — The statute cited above [A.C.A. § 14-266-105(a)(5)]authorizes municipal regulation of `intercity . . . patient transportsoriginating from within the regulating city,' but the same does notprovide for local regulation of `intercounty patient transports.' Arepatient transports between cities that are located in different countiesauthorized for local regulation by the `intercity' provision, or is localregulation prohibited by the `intercounty' exception regardless of wherethe transport originates? Does the requirement in the statute's exceptionthat the transport originate `outside the regulating city' apply only tointercity transports, or to both intercity and intercounty transports?
With respect to the first part of your question, although A.C.A. §14-266-105(a)(5) is far from a model of clarity, I do not believe the pertinent legislation authorizes local regulation of "intercounty patient transports." With respect to the second part of your question, I believe the qualification that an excepted transport originate "outside the regulating city" applies only to "intercity patient transports" occurring within a particular county.
As noted in my response to your first question, A.C.A. § 14-266-105
provides in pertinent part:
(a) Cities of the first class and second class are authorized:
* * *
 (5) To regulate all intracity patient transports and intercity and intracounty patient transports originating from within the regulating city. However, this chapter shall not restrict or allow local regulation of not-for-hire on a fee-for-service basis transportation, any intercounty patient transports, or intercity patient transports to or from medical facilities within the regulating city originating from anywhere outside the regulating city.
At issue in the first of the questions just posed is whether the term "intercity" in the first sentence of the statute refers only to transports between cities located within one county or whether it might further refer to transports between cities located in different counties. In my opinion, the term "intercity" in this statute is qualified by the immediately following language "and intracounty," meaning that an originating city may not regulate a patient transport between counties.
I am led to this conclusion by the accepted principle of statutory construction that legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State, 315 Ark. 1,864 S.W.2d 859 (1993); City of Fort Smith v. Tate, 311 Ark. 405,844 S.W.2d 356 (1993). In the present case, if the term "intercity" in the first sentence of the statute were read as referring to intercounty as well as to intracounty transports, thus authorizing an originating city to regulate an intercounty ambulance transport, the first sentence would contradict the second sentence, which expressly provides that "this chapter shall not . . . allow local regulation of . . . any intercounty patient transport. . . ." One can avoid this contradiction by reading the term "intercity and intracounty" as a unitary condition — namely, between cities within the county. Reinforcing this reading is the grammar of the first sentence. If the legislature had intended to afford an originating city the authority to regulate all intercity transports, whether within the county or between counties, it would logically have referenced "all intracity patient transports, intercity patient transports and intracounty patient transports." The comma in the phrase just quoted serves the classic purpose of separating the items in a list, just as the word "and" serves the classic purpose of separating the penultimate from the final item in a list. By contrast, the statute as written crucially omits the comma in the phrase just quoted, instead including the first "and." Normally, the use of the conjunction "and" instead of a comma would suggest that the list at issue comprises only two items, not three — in this case, "intracity transports," on the one hand, and the unitary category of transports that are both "intercity and intracounty," on the other.[3] Specifically with respect to your question, then, I believe the statute forecloses local regulation of intercounty patient transports.
With respect to your second question, I am struck by the fact that the closing phrase, "or intercity patient transports to or from medical facilities within the regulating city originating from anywhere outside the regulating city," is preceded by a comma in the statute. According to a standard principle of statutory construction, if a comma precedes a conjunction connecting two coordinate clauses or phrases, any qualifying language contained within the latter phrase or clause will apply only to that clause or phrase and will not modify the clause or phrase that precedes the conjunction. See generally 82 C.J.S. Statutes § 334 (1999). Applying this principle in the present case, I believe the requirement in the statute's exception that the transport originate "outside the regulating city" applies only to "intercity patient transports."
Having ventured this opinion, I must add that my conclusion supports my response to the first part of your question. If, as I have opined, the statute's closing phrase "originating from anywhere outside the regulating city" modifies only the phrase "intercity patient transports to or from medical facilities within the regulating city," the statute imposes a blanket proscription against local regulation of any
intercounty patient transports.
Assistant Attorneys General Elisabeth A. Walker and Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EWJD/cyh
[1] "Emergency medical services" is defined as "the transportation and emergency medical technician care provided the critically ill or injured prior to arrival at a medical facility by a certified emergency medical technician (EMT) and within a medical facility subject to the individual approval of the medical staff and governing board of that facility." A.C.A. § 14-266-103(1). "Nonemergency ambulance services" means the transport in a motor vehicle to or from medical facilities including, but not limited to, hospitals, nursing homes, physicians' offices, and other health care facilities of persons who are infirm or injured and who are transported in a reclining position. . . [.]" Id. at subsection (2).
[2] It should be noted, however, that the Act specifically provides that "[n]othing in this chapter shall apply to nonprofit or hospital-based ambulance services operated on November 1, 1981, by a nonprofit organization or an Arkansas hospital licensed by the Department of Health." A.C.A. § 14-266-104.
[3] Moreover, although it does not bear directly on your question, I believe the statute might further authorize an originating city to regulate an intracounty transport that is not "intercity." I appreciate that the term "intercity" might be considered mere surplusage under this reading, since the phrase "intracounty patient transports" would appear to include the category of "intercity and intracounty patient transports." However, I believe the legislature may have included the term "intercity" in an attempt to clarify that the term "intracounty" does not refer only to unincorporated areas of the county. What I am suggesting, then, is that the term "intracity" does double-duty in this statute, both qualifying the term "intercity" and authorizing the regulation by an originating city of any intracounty transport. Notwithstanding the fact that the list thus comprises three items, not two, the initial "and" remains necessary in order to avoid any confusing suggestion that the first sentence of the statute authorizes the regulation of all intercity transports.